Filed 7/24/26  P. v. Ross CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　v.<br><br>KEITH E. ROSS,<br><br>　　Defendant and Appellant. | B338691<br><br>(Los Angeles County<br>Super. Ct. No. SA120316) |

APPEAL from an order of the Superior Court of Los Angeles County, Christopher W. Dybwad, Judge.  Affirmed.

Laura Grace Schaefer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Roberta L. Davis and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Keith E. Ross appeals from the denial of his resentencing petition under Penal Code[1] former section 1170.95, now numbered 1172.6.  Defendant contends substantial evidence does not support the resentencing court's finding that he was a major participant in a robbery and acted with reckless indifference to human life.

We disagree.  The evidence showed defendant planned the robbery and committed it with a confederate armed with a submachine gun.  Early in the robbery, the confederate fired his weapon towards one of the victims.  Although the shot missed the victim, the confederate's conduct put defendant on notice of an increased risk his confederate would use lethal force.  Defendant took no action to mitigate that risk.  Instead, he continued with the robbery, during which the confederate shot and killed one of the victims.  These circumstances, along with other factors, are substantial evidence in support of the resentencing court's finding of guilt beyond a reasonable doubt.

Accordingly, we affirm.

## FACTUAL BACKGROUND

Defendant had two trials — his original trial in 1994, then a retrial on a special circumstance in 1998.

### 1. *Evidence at first trial*

On September 14, 1992, defendant entered a Mills Jewelers shop in Ventura.  Defendant informed a store employee he was a diamond dealer.  Defendant asked about the location of Mills Jewelers' main office and where the company's goods were stored.

---

[1] Unspecified statutory citations are to the Penal Code.

2

The employee referred defendant to a trade publication that listed the main office address.

The next day, defendant and codefendant Gregory Norwood went to Murray Brown's house. Defendant or Norwood asked Brown if they could use his car as a getaway car for a "job" involving a jewelry mall. Brown recalled it was defendant "doing the explaining" about the job while Norwood "was doing mostly the listening." Defendant said he had cased the location. There was discussion of obtaining a mail carrier uniform to gain entry into the building. Brown agreed to lend them his car.

Defendant and Norwood left Brown's house but returned the next morning, September 16. Defendant had a shotgun and what Brown thought might be an "Uzi" submachine gun. Defendant and Norwood loaded the guns, "playing with them, working them . . . ." Defendant also had a mail carrier uniform, which Norwood put on.

Later that afternoon, Mills Jewelers owner Sherman Kulick and his bookkeeper Dolores Medina were working in the company's wholesale office in Culver City. Medina heard the door buzzer and saw a man in a mail carrier uniform on the security monitor. At trial, she identified that man as Norwood. Medina pushed a button that opened the door so Norwood could come inside. When Norwood entered, Medina saw he was carrying a gun. Norwood said, " '[O]kay, Sherman, give us everything you have.' "

A second man was standing behind Norwood. Medina identified him at trial as defendant. Defendant began opening file cabinets.

Kulick said, "If this is a joke, it's [in] very bad taste." " Kulick moved towards the back of the office, then said, " '[Y]ou

3

guys might as well leave now because I pushed the alarm button and the police will be here shortly.' "

Norwood said, " '[T]his is serious,' " and fired his gun. Medina testified she "saw the fire" going in the direction of Kulick, although he was not hit.

Defendant approached Medina and ordered her to tell him where the alarm button was. Medina said she did not know. Defendant then turned towards Kulick and tried to grab the gold watch on Kulick's wrist. There was a struggle as Kulick pulled his hand away. Defendant gave up the attempt to take the watch and walked into a room in the back of the office. Norwood continued to point his gun at Kulick and Medina.

Defendant came out of the back room holding a black handbag Medina testified belonged to Kulick. Defendant walked towards the office front door. Kulick said, " '[W]hat are you doing, what are you doing? Leave my premises.' "

As Kulick was telling the robbers to leave, Norwood opened fire. Medina counted two gunshots. Kulick bent over, and Medina believed he had been hit in the stomach. Medina saw defendant opening the front door. Defendant and Norwood exited and ran away.

Medina testified she never saw Norwood and defendant speak to each other during the robbery. She said the incident happened "[v]ery fast."

Kulick was shot three times, twice in the groin and once in the thigh. The shots to the groin damaged the femoral artery and vein; the shot to the thigh did not cause major injury. He died in the hospital three days later. Police recovered three shell casings from the crime scene.

4

Norwood's weapon was identified as a semi-automatic submachine gun that had been modified to fire in full automatic mode. This means the weapon would continue to fire as long as the trigger was held down. It had an ammunition capacity of 31 rounds.

## 2. *Retrial*

Medina testified at defendant's retrial. She testified Kulick, upon seeing the robbers, said, " 'You must be joking,' " then, " 'You guys might as well leave now because I already pressed [the] alarm button and the police will be here shortly.' " Norwood said, " 'This is serious,' " and fired his gun.

Asked in what direction Norwood fired, Medina testified, "Well, to the front, you know. I cannot tell you exactly but the bullets were all over." Asked if Norwood fired in the air, towards Medina, or towards the ground, Medina said, "No. As far as I can see, I was facing him with a gun. I don't know which, you know, direction the bullets strike." Asked if Norwood fired more than one shot, Medina said, "Well, I hear one. Can be more. But if you are under this situation, how [can you] tell."

After Norwood fired, Medina urged Kulick to give the robbers everything they wanted. Defendant grabbed at Kulick's watch. Kulick resisted, and there was a struggle. Kulick's watch had "a very strong safety lock" so defendant could not get it off Kulick's wrist. Defendant turned to Medina and asked her where the alarm was, then went into a back room of the office.

Kulick followed defendant asking what defendant was doing. Defendant came out of the back room holding a purse. Kulick continued to follow defendant, telling him to give the purse back. Norwood opened fire, hitting Kulick. Kulick walked a few steps and collapsed. Defendant and Norwood left.

5

## PROCEDURAL BACKGROUND

At defendant's first trial, the jury convicted him of first degree murder and second degree robbery. The jury found true a special circumstance allegation that the murder was committed during the robbery. The jury found that a principal was armed with a firearm as to both counts.

On direct appeal we reversed the special circumstance because of instructional error. On retrial the jury again found the special circumstance true. Defendant was sentenced to life without parole plus nine years. We affirmed the judgment.

In 2019, defendant filed a petition for resentencing under former section 1170.95. The resentencing court denied the petition at the prima facie stage, and we affirmed. The Supreme Court granted review and directed us to reconsider our decision in light of new case authority. We issued a new opinion reversing the denial of defendant's petition and instructing the resentencing court to issue an order to show cause and hold an evidentiary hearing.

The resentencing court conducted the evidentiary hearing, at which the only evidence submitted was the record from defendant's trial, and our prior appellate opinions for purposes of procedural history only. Following the hearing, the court invited the parties to lodge the record from the retrial, and defendant lodged a reporter's transcript of Medina's retrial testimony.

The resentencing court issued a written order denying defendant's petition. The court determined defendant was guilty of murder as a major participant in the robbery who acted with reckless indifference to human life under the factors set forth in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

The resentencing court found defendant was a major participant in the robbery because defendant planned the robbery; defendant supplied the firearm and mail carrier uniform used by Norwood; defendant knew the robbery would involve a loaded firearm; defendant was present at the scene of the killing; and defendant did not attempt to dissuade Norwood from further violence after Norwood fired the first shot at Kulick. The court expressly found Norwood's first shot did not hit Kulick.

The court found defendant acted with reckless indifference to human life because defendant provided Norwood with a fully automatic submachine gun, "a highly dangerous firearm"; defendant had time and opportunity during the robbery to restrain Norwood from firing additional shots but did not do so; and Norwood's first shot put defendant "on notice of the danger posed by Norwood."

Defendant timely appealed.

## DISCUSSION

### A. Applicable Law

#### 1. *Senate Bill No. 1437 and section 1172.6*

"Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015) amended sections 188 and 189 of the Penal Code to 'eliminate[ ] natural and probable consequences liability for murder as it applies to aiding and abetting, and [to] limit[ ] the scope of the felony-murder rule.' [Citation.]" (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1173 (*Lee*).) "[U]nder the felony-murder rule as it existed prior to Senate Bill No. 1437, a defendant who committed a statutorily enumerated felony such as robbery could be convicted of murder

7

for a killing during the felony without further examination of their mental state." (*People v. Garcia* (2022) 82 Cal.App.5th 956, 964–965.) After Senate Bill No. 1437, however, "[a] participant in the perpetration or attempted perpetration of [an enumerated felony, including robbery] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1)  The person was the actual killer.  [¶]  (2)  The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  [or] (3)  The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); see *Garcia*, at p. 965.)

Senate Bill No. 1437 also added former section 1170.95, now numbered section 1172.6, "which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 957.)  "If a petitioner makes a prima facie showing of relief under section 1172.6 — that is, a showing that the petitioner was convicted of murder, attempted murder, or manslaughter under a theory no longer valid under the amended Penal Code — the resentencing court must issue an order to show cause for an evidentiary hearing." (*Lee*, *supra*, 95 Cal.App.5th at p. 1174.)

At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by" Senate Bill No. 1437.  (§ 1172.6, subd. (d)(3).)  In determining whether the prosecution has met its

burden, "[t]he trial court acts as an independent fact finder." (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457 (*Rodriguez*).)

We review a resentencing court's denial order following a section 1172.6 evidentiary hearing for substantial evidence. (See *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) Under that standard, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Grandberry* (2025) 116 Cal.App.5th 934, 946.) "We resolve all evidentiary conflicts and questions of credibility in favor of the judgment. [Citation.] We cannot reweigh the evidence or reassess witness credibility on our own." (*Ibid.*)

### 2. Felony murder as a major participant acting with reckless indifference to human life

To recap, the resentencing court found defendant was guilty of murder under current law because he was a major participant in an enumerated felony in which a killing occurred, and he acted with reckless indifference to human life. (§ 189, subd. (e)(3).) In *Banks* and *Clark*, our Supreme Court "endeavored to elucidate the contours of the major participant and reckless indifference standards." (*People v. Emanuel* (2025) 17 Cal.5th 867, 882 (*Emanuel*).) Those standards originated in section 190.2, subdivision (d), the felony murder special circumstance, but the Legislature "imported those standards" into the felony murder statute through Senate Bill No. 1437. (*Emanuel*, at p. 881.)

*Banks* provided factors to consider in determining whether a defendant was a major participant. (*People v. Strong* (2022)

9

13 Cal.5th 698, 705–706 (*Strong*).) Those factors are: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations]." (*Ibid.*)

In *Clark*, our high court explained that reckless indifference "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.) The *Clark* factors, as summarized in a later high court decision, are: "use of or awareness of the presence of a weapon or weapons, physical presence at the scene and opportunity to restrain confederates or aid victims, the duration of the crime, knowledge of any threat the confederates might represent, and efforts taken to minimize risks." (*Strong*, *supra*, 13 Cal.5th at p. 706, citing *Clark*, at pp. 618–623.) "Because the major participant and reckless indifference elements often ' "significantly overlap" ' [citation], this list of factors also overlap[s] with those . . . identified in

10

connection with the major participation inquiry in *Banks*."
(*Strong*, at p. 706.)

"'Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death"' satisfies the statutory requirement. [Citation.] Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)

## B. Substantial Evidence Supports the Major Participant/Reckless Indifference Finding

Defendant's trial record contains substantial evidence supporting the resentencing court's findings.

### 1. *Major participant*

Starting with the *Banks* major participant factors, there was substantial evidence defendant was intimately involved in planning and preparing for the robbery. He posed as a diamond merchant to obtain information about the target. He cased the building. Along with Norwood, he procured a getaway car, firearms, and a mail carrier uniform to gain entry. Brown testified defendant did most of the explaining with Norwood listening, which supports an inference defendant was the ringleader of the operation.

There was substantial evidence defendant had a significant role in supplying lethal weapons. Brown said it was defendant who arrived at Brown's home with the firearms, and he and Norwood inspected and loaded them together.

It does not appear there was evidence defendant was aware of any increased dangers based on the nature of the crime or

11

Norwood's past conduct prior to the crime. There was, however, substantial evidence to support an inference that defendant was aware of increased danger because of the weapons used; Norwood was armed with a submachine gun that could hold 31 rounds and was modified for fully automatic fire, a "highly dangerous firearm" as the trial court said.

It is undisputed defendant was at the scene of the killing and in a position to prevent the murder. Substantial evidence supports a finding his inaction played a role in the death — Norwood had demonstrated willingness to use lethal force when he fired an initial shot in Kulick's direction, as Medina testified, but defendant took no action to deescalate the situation or discourage Norwood from further violence.[2]

Defendant's conduct after the killing was to run away. In *Emanuel*, our high court observed a defendant fleeing may simply indicate a desire to avoid arrest, without shedding light on the defendant's mental state at the time of the killing. (*Emanuel*, *supra*, 17 Cal.5th at pp. 894–895.) We draw no inference from defendant's postkilling conduct one way or the other, nor did the resentencing court.

On balance, given substantial evidence defendant was heavily involved in planning and preparing for the robbery, including obtaining a highly dangerous weapon, and defendant was at the scene of the killing and aware of the danger Norwood posed after Norwood's initial shot in Kulick's direction, the

---

[2] The Attorney General argues the evidence supports an inference Norwood's initial shot hit Kulick in the thigh. The resentencing court expressly found that first bullet did not strike Kulick. We assume for purposes of this appeal Norwood's first shot did not hit anyone.

resentencing court reasonably could conclude defendant was a major participant in the robbery.

### 2. *Reckless indifference*

Turning to the *Clark* reckless indifference factors, there is no evidence defendant himself used a weapon during the robbery, but as discussed above, there was substantial evidence he was aware Norwood was armed with a highly dangerous weapon. Again, defendant was physically present at the scene and aware Norwood posed a threat because Norwood fired an initial shot in Kulick's direction.

Although the duration of the crime is unclear, there was time enough after Norwood fired his initial shot for defendant to struggle with Kulick for Kulick's watch, question Medina about the alarm, and go into the backroom to find Kulick's handbag and walk it out the front door. There is substantial evidence, therefore, that defendant had time to try to calm Norwood down, halt the robbery, or take other action to avoid further violence. Defendant instead did the opposite, increasing the tension by struggling with Kulick for the watch, and leaving the armed and dangerous Norwood with Kulick and Medina while defendant went into the backroom and then out the front door. In sum, there was substantial evidence defendant was aware of the danger Norwood posed yet he took no action to minimize that danger. The resentencing court reasonably could conclude defendant acted with reckless indifference to human life.

### 3. *Defendant's counterarguments*

Defendant's briefing begins with his arguments regarding reckless indifference. Defendant argues the mere fact he knew a gun would be used in the robbery does not establish reckless

13

indifference to human life, and the evidence did not support the resentencing court's conclusion Norwood's weapon was highly dangerous. Neither the resentencing court's findings nor our holding are based solely on defendant's awareness of the weapon — that is just one factor in the analysis. The evidence the submachine gun could hold 31 rounds and fire repeatedly so long as the trigger was held down supports the conclusion it was a highly dangerous weapon. Although defendant argues the nature of the weapon did not "enhance[ ] the shooter's ability to murder the victim in the particular circumstances of this case," what matters for our analysis is defendant had reason to know the high-capacity, rapid-firing weapon elevated the risk of death or injury, and he proceeded with the crime despite that risk.

Defendant argues the evidence is unclear whether defendant supplied the submachine gun. This is not a significant point. Whether or not defendant supplied the weapon, he was aware of it and he and Norwood loaded and manipulated the submachine gun and shotgun together prior to the robbery.

Defendant disputes that he had reason to know Norwood posed a danger and failed to mitigate that danger. He argues simply participating in an armed robbery does not demonstrate reckless indifference, and therefore the fact that he continued the robbery after Norwood fired the initial shot should not weigh against him. There is a world of difference between participating in a robbery with no indication that a perpetrator poses an increased risk and the instant case, in which Norwood's initial shot towards Kulick amply demonstrated he posed an increased risk, yet defendant continued the robbery disregarding that risk.

Defendant notes that once he obtained Kulick's handbag he left the office, with no indication he intended to interact further

14

with Kulick. As explained above, it was defendant's inaction in the face of Norwood's initial shot, including leaving Kulick at Norwood's mercy while defendant took the handbag and left the office, that supports a finding of reckless indifference. Defendant's culpability is not based on lethal intent, but on indifference to the lethal threat posed by Norwood as demonstrated by Norwood's initial shot towards Kulick.

Defendant argues Norwood firing the initial shot "did not make it clear that Norwood intended to use lethal force." Defendant contrasts the facts of this case with *In re Loza* (2017) 10 Cal.App.5th 38, in which the defendant stood by while his confederate "demanded money from the [store] clerk while counting down from five and threatening to shoot." (*Id.* at p. 53.) If anything, the facts of the instant case are stronger than in *Loza*, because Norwood did not merely *threaten* to shoot but *actually* shot in the direction of Kulick.

Characterizing Norwood's initial shot as a "warning shot," defendant argues Norwood did not " 'exhibit[ ] behavior tending to suggest a willingness to use lethal force' before committing the fatal act itself." Again, Medina testified Norwood fired the initial shot in Kulick's direction, which belies defendant's "warning shot" characterization. Thus, defendant's analogy to *In re McDowell* (2020) 55 Cal.App.5th 999 (*McDowell*) in which the defendant's confederate fired a warning shot into the floor, is inapt. (See *id.* at p. 1005.)[3]

---

[3] *McDowell* in fact held there was substantial evidence the defendant acted with reckless indifference based on factors in addition to the "warning shot." (*McDowell*, *supra*, 55 Cal.App.5th at p. 1015.)

Defendant cites other cases with purportedly stronger indications of reckless indifference, such as that the defendants themselves were armed.  Notably, however, defendant fails to cite any case suggesting that a defendant's indifference to a confederate firing a weapon, not as a warning shot but towards a victim, is insufficient to establish recklessness, particularly when combined with the factors discussed above.

Defendant quotes Medina's testimony the incident occurred " 'very fast,' " and argues the duration of the crime does not support a finding of reckless indifference.  As we have explained, there was enough time after Norwood's initial shot for defendant to struggle with Kulick, talk to Medina about the alarm, search the backroom, and walk out the front door.  The resentencing court could infer there was enough time, therefore, for defendant to take steps to prevent or reduce the risk of further violence.

Defendant argues there was no evidence the robbery posed a heightened risk of violence, given there were only two unarmed victims in a building not open to the public.  Defendant suggests the choice to use the mail carrier disguise to gain entry, rather than force, showed efforts to minimize the violence.

We disagree defendant's conduct demonstrated an attempt to minimize violence.  Our high court has held that committing crimes out in public, " 'when the possible presence of witnesses might reasonably be thought to keep [the defendant's] accomplices within the bounds of the plan[,]' tended to minimize the risk of lethal violence." (*Emanuel*, *supra*, 17 Cal.5th at p. 887.)  In light of that case law, defendant's choice to commit a robbery in a nonpublic building out of view of witnesses is not a mark in his favor.  The use of subterfuge rather than force to gain entry tells us little of defendant's mental state — he may have

16

simply determined force would not work to gain entry, and subterfuge was his best option.

Further, as discussed, the choice to use a high-capacity rapid-fire submachine gun elevated, rather than minimized, the risk above that of a standard armed robbery. More significant was Norwood's actual firing of the weapon towards Kulick. To the extent defendant was unaware of the heightened risk before the robbery, Norwood's shooting towards Kulick put defendant on clear notice of that risk, and his inaction in the face of that risk supports a finding of reckless indifference.

Defendant also contests the finding that he was a major participant. He concedes he participated in planning the robbery, but argues, as he did in contesting reckless indifference, that the evidence was weak that he supplied the weapons for the crime. As we have explained, it is a minor point whether defendant procured the weapons, because the important fact is he was well aware of them and their destructive potential. Defendant again argues the submachine gun was not particularly dangerous compared to other guns, an argument we have already rejected. Defendant again argues he did not have an opportunity to prevent the murder, and we have rejected that argument as well.

Defendant argues his postkilling conduct does not indicate reckless indifference. As we have stated, neither the resentencing court nor we have drawn any inferences from defendant's postkilling conduct.

## DISPOSITION

The order denying resentencing is affirmed.

<u>NOT TO BE PUBLISHED.</u>


BENDIX, Acting P. J.


We concur:



WEINGART, J.



M. KIM, J.